May it please the Court, I'm Appellant Jonathan Bissoon-Dath. Your Honours, I'd like to reserve five minutes for rebuttal, please. All right. Your Honours, the hallmark of copyright protection is originality. The purpose of substantial similarity analysis is to help us determine if protected elements of plaintiff's work were taken. It is simply a method for determining when the totality of the similarities goes beyond the basic common idea between the works and belies any claim of literary accident. Your Honour, in this case, the basic common idea that a reasonable juror could find is that Athens is safe from an attacking army. I think that it's only fair when the Court sets that, that they use the inference that a reasonable juror could draw in favor of appellants, appellants of the nonmoving party. If you were to set it at something else, for example, Athens is safe from destruction by an army in the service of Ares, you would not be giving appellants the presumption to which they're entitled about that base common idea from which to determine what idea and expression are. Counsel, I think the difficulty I'm having with your argument is that the whole Greek mythology concept is common. So it's really difficult to determine that there is something unique in the elements of the story that's been infringed upon. So could you help me with that? Oh, absolutely, Your Honour. Well, first of all, Your Honour, if you take it back to the whole realm of Greek mythology, that's actually an abstraction even further back than the concept of Athens being safe from an army in the service of Ares. Or even closer to that would be Athens is safe from an attacking army. The fact is that copyright law allows us to protect distinguishable variations of more general ideas. Okay. I have laid out in extensive detail in tables, in supporting substantiating documents and extrinsic analysis, multiple distinguishable variations that were actually unique to my work in over 3,000 years of literature about ancient Greece, fact or fiction. The Court simply need examine those specific distinguishable variations and can see on the record there's no proof that they have existed anywhere else. And, in fact, most of them, almost all of them do not. Therefore, it's a fact that they're original. Originality only requires a very small amount. But the other piece to that is that the allegedly infringing document also copied those. And so we have to compare your stories with the game to see if your original elements are copied in the game. Absolutely, Your Honour. And that's why I understand the complexity of doing that. The Court really needs to make a detailed analysis here. And that's what we're asking for. Yeah, the district court did that. And so we're looking at whether the district court's analysis was erroneous. I believe it was erroneous. Just one thing to tell you that it's erroneous was Judge Patel got some very basic facts about the truth of even God of War wrong. She said that Athens was not saved in God of War when, in fact, we know that it was. In the briefing, I pointed out that in defendants' motion for summary judgment in their brief, as well as a supporting declaration, they say Athens is saved from Ares and his army. But Athens being saved is sort of a common idea in terms of Greek mythology. I mean, even people who are not really well-versed in Greek mythology, you know. That's exactly the point, Your Honour. It is the basic common idea. It's a scene. The difficulty I'm having is, you know, our law says that if you have a scene affair, you know, something set in the stage, a common plot idea, if you will, that that's not something that can be, you know, infringed upon. And Athens being saved is kind of, in my view, I'm not speaking for my other panel members, but in my view, that's kind of something that's kind of in the global arena of mythology. And that's exactly the starting point, Your Honour. But if we take, just as in the great white case, the terror fish attacking the Atlantic seacoast, that general idea, how plaintiffs and appellants have developed that idea is their expression. Right. And we have countless patterns that far supersede the Metcalfe patterns, both in complexity, numerosity, as well as the fact that the individual discrete elements comprising those patterns are individually protected. I looked at those. I looked at the heroes, the main protagonists, the maps, all of those. And I just, I'm not sure that you made your case that it's infringing. Well, Your Honour, the point is the way I developed that, for example, if you take the next level down, Athens is saved from an army in the service of Ares. That doesn't happen anywhere in the history of the world, fact or fiction. And then from there on, so that is my expression, because it's the more detailed, specific version of the general idea. And then fact, not fact, and then story point after story point also fits that description. Your Honour, you must make, in this case, a detailed analysis. And that's what we're asking for. If you take just a generalized analysis, like this is all Greek to me. Trust me, we have looked at the details of all of those tables that you gave us. We looked at every single one of those tables. And what you said when you put the columns in your brief and compared your story to gods of war, we've looked at all of that as we have to do to prepare for the case. So please be assured that we have looked at everything. Your task and your challenge is to convince us that they are similar enough that we should determine that the district court erred in saying that there was no infringement. Absolutely, Your Honour. Well, maybe I could start with talking about the first, the five story points. Okay. The five story points, as I described in the brief and in my reply, I cited to those as well as specific versions of them. Okay. If we look at the first one of those story points, which would appear at 16.1 of the summary of source material. Okay, now what does that, where do you say that the game has stolen that idea? Well, Your Honour, that's not just an idea. That's a specific story point that constitutes expression. Okay, story point. I stand corrected. Where do you say that the gods of war game has stolen that story point? Where is that? Well, first of all, Your Honour, if you would look at my summary of source material 16.1, it substantiates. But the point is that quick. But just answer my question. Yes, Your Honour. Okay, you pointed me to that story point. So I'm asking you, in order for you to show that that's been infringed, you have to tell us where in the game gods of war that story point was appropriated. Yes, Your Honour. Where is that? Yes, Your Honour. Well, they appropriated by a derivative method that in god of war, Kratos attacks, Kratos who is fitting that same description of this cruel animalistic Spartan commander, who is the fanatical follower of Ares to the exclusion of Athena and the other gods, attacks a village on the outskirts of Athens that is the key to defeating Athens. The difference I saw is that the brutish character you had in your stories was not the main protagonist. The main protagonist in your case was the 17-year-old or the youth who was supposed to do the Olympic games. Yes, Your Honour.  What we find is that god of war, consistent with David Jaffe's expressed modus operandi of combining characters from the copyrighted works of others, combined original and unique character roles from my work into individual characters. We know from the universal great white case that that's not allowed. The shock expert and another character were combined into the police chief, I believe, in that case. We know that you can't take multiple characters and combine them. Now, it's really telling in our case, actually, if you look at it from the perspective of character roles, because Kratos performs three character roles that were absolutely unique to my work in the history of the world, as well as lays out multiple individual discrete story elements that by themselves form distinguishable variations that never existed in the history of the world to execute each of those character roles. If you'll inspect it very closely, you'll see that. Kratos performs the role of... You talk as if we didn't inspect it very closely. I just want to state for the record that the judges on this panel have inspected the record very closely. So please don't accuse us of not inspecting the record closely. We have done that. No, Your Honor, I would never suggest that. I'm just saying that to answer your question, I was intending to direct you again there. I apologize if it came off any other way. All right. You wanted to save five minutes for rebuttal. Well, let's see what opposing counsel has to say, and then you can return to respond. Good morning. May it please the Court, I am Louis Petrich, and I am appearing for Sonny and David Jaffe. We think that this case can be looked at in perhaps three ways. One, you look at the works as a whole and try to determine whether there is comprehensive nonliteral similarity. I think it's very clear that there is not. In doing that, you look at what makes up a story, and the story generally is the characters, the relationships between them, and the essential sequence of events. And as in the Benet case, the last samurai case, while you can come up with similarities because, after all, they're about Greek history and Greek mythology, the differences are so different that you end up with two different stories. So on that level of analysis, the plaintiff's case fails. He might argue that there is fragmented literal similarity, but there he has to show that the similarity is nearly identical, and he has to show that it's not as to something that's a scene affair, an idea, or a historical fact. But opposing counsel's position is that your client has taken unique elements from his stories and have combined them to create your work, to create the work of your client. As Judge Hand said in the Avis Irish Rose case, universal case, went back to, I think, 31, and it's been quoted by the Ninth Circuit and the Second Circuit, we can always abstract two stories to a level where they start to seem similar, especially if they're about the same subject matter. And that's what he's done here. He says the heart of his claim is that you have Athens saved from an army in the service of Ares. But when you break that down, they're quite different expressions. In his, he has two supposed attacks on Athens. First attack is when the Spartan army moves on Athens, which we know there was a Peloponnesian war. They did that for about 30 years. There's no mention of Ares at that point in his story. They're not in the service of anybody except themselves. Then later, we see in the story that Ares instigates the Spartans to agree to have an Olympics to lure the Athenians to Sparta for the Olympics so that the Athenians can run back and attack Athens. Now in the service of covers a lot of territory. When they attack Athens later, we don't see Ares in the picture. All we know is that he supposedly instigated or gave the Spartans the idea to do that. In the defendant's work, you have something quite different. First of all, there is no attack on Athens at the beginning of the story of Kratos. He attacks a village, and we're told in the, not in the game, but in a pamphlet, that it's a village on the outskirt of Athens. And from that, plaintiff says, well, that was just preliminary to going into Athens. But we realize from the story this had a very different point. That was an attack that was set up by Ares to lure Kratos into unwittingly killing his own family in the temple so that it would drive, well, Ares had the idea that that would make him a stronger warrior. In fact, what it does in our story is it drives him insane. And then that triggers the whole series of events where he then turns on Ares and ultimately kills Ares and becomes the new god of war. In the second attack supposedly on Athens, it's not led by an army in the service of Ares. It's led by Ares. And his so-called army isn't Spartan. His army is some weird monsters. So these are very different expressions. Opposing counsel's, well, your opponent's position is that you don't look at differences. That's misleading. You look at the similarities. Well, there are at least ten reported decisions in the Ninth Circuit in the last 24 years that have looked at differences. But the most recent of them is the last samurai case, Bonnet, that starts out with a statement that there are seven similarities between the works, and then says, but the differences on inspection are tremendously different, and for that reason there's no substantial similarity. And that's a case where the court assumed access. The previous case, that was the Funky Films case in 2006. Bonnet was just last year. The 2006 case, which was Funky Films, involved the television series Six Feet Under. And the court said superficially there are a lot of similarities here, but when we look at them and filter out, as we have to, fact, idea, scene affair, they're very different stories. And that's the bottom line when it comes to looking at works on the level of comprehensive, non-literal similarity. If you do it any other way, you give a monopoly to somebody for the elements that make up a story. And stories are just, as in Metcalf, Judge Kaczynski said, stories are made up of a lot of public domain elements. It's the way they're strung together. It's the way that those characters relate to one another, and it's the essential sequence of events. Could you address the maps? First of all, the chart that counsel has put up in the upper right-hand corner is supposedly a picture of the Temple of Pandora. And I know he complains that he thinks there's a bottomless crevasse and there's a rope bridge to it. Well, whether it's bottomless or not really is not the point. In fact, it can't be bottomless because we're told in the story that Pandora's Temple is chained to the back of a titan and the titan's crawling on the desert floor. So there's a bottom there somewhere. But when you think about it, it's a scene affair. This is a game full of obstacles. That crevasse operates like a moat to a castle. That's all it is. There's nothing special about it. But wasn't there some similarity to the names of Valley of the Dead Souls versus Desert of the Dead Souls or something like that? Meadow, I think, of the dead souls and the valley. I'm confused. Something of the dead souls.  So you don't think that's a unique portion of his story that's appropriated by the game? Not unless the word phrase dead souls. And dead souls goes with Hades. It arises naturally from the concept. But for each work to have a map with coincidentally, you know, a part of that map being a valley where dead souls reside, that's more than just a concept of dead souls. Well, it's not a valley, Your Honor. One's a meadow and one is a... Well, but that's superficial. I mean, you can change one word in it. That's superficial. But it just seems coincidental that you would have, you know, maps that have the same concept located along the same path. I can't speak for his.  I know in, I think, one of his first treatments that it's not extrapolated. It's a story point in ours. Our character is actually impaled and is going to Hades, and he comes back. So the notion of the lost souls is a part of our story. His is he didn't think enough of it to put it in a second, third, or fourth draft. It's just a one-liner in his. But it is on the map, though. Well, yes, and the map in ours, as in his, is supposed to depict some of the action in the story, and that's what ours does. The counsel talks about the Great White Case, which was the movie that was found to be an infringement of the movie Jaws. He talks in his reply brief about some trivial thing about both have women with blonde hair. In fact, as Your Honor has suggested, you've read the case. There are actually 20 paragraphs of similarities in that case, and that is quite distinguishable. Plaintiff talks about how you can combine characters. Yes, you probably can. If you took two characters and took all of the things that made them characters and put them into one, you might have a reasonable way to compare. But if you just take from one character the fact that he's brutal and another character that he's a young hero, what happens then is you're not comparing characters, you're comparing attributes, and you're allowing the plaintiff to choose all the attributes of various characters in his work, and that allows him basically to own attributes of characters. Well, but if both of the characters just happen to be commanders, you know, in a mythological army that have these attributes, isn't that closer to infringement, though? Not really. It seems to me it's a scene of fear. You're not going to have a hero who's not a commander. I mean, that's... Well, that proves my point. He's comparing that young hero to Kratos. Well, but you said you can't have a hero that's not a commander, and his argument was that even if you were going to have the same attributes, the person didn't have to be a commander. You didn't have to appropriate that concept in order to make your story what it is. The conceit of our story is that our character is a commanding figure who commands armies from the beginning to the end of the story. The storyline he has is a young shepherd boy who rises to the occasions like Luke Skywalker in Star Wars, and you have this arc of the character where he becomes a hero. They're quite different stories, but within the concept of our story, it's important that our character be seen to be a commanding figure. He's a person who is to be feared, and he is from beginning to end, and so he happens to be a commander. There are going to be commanders in the Spartan army, and that's what he compared with the plaintiff's essay. He says, I've got some Spartan characters who happen to be commanders, so you've got commander and commander, but you can't compare them because our character is a protagonist. Theirs is an antagonist. There's nothing else about that character other than the plaintiff's character, other than the fact that he's a captain or a colonel that compares to ours. He doesn't have the background. He doesn't have the history, everything that makes up a unique character. The character is the sum of their parts and includes what they do. Characters are what they do in the story. Finally, he talks about, well, his five story points, and I think it turned out that he just told us about one, and one is the same one that he's been talking about from the beginning, which is his notion that they both involve attacks on Athens by persons in the service of Ares. The plaintiff has also said that there should be some kind of protection for a combination of elements, and if that's taken too literally, that means that he would have protection for a list of all of the things that happen in his works, and courts have just not adopted that view when it comes to comparing stories. We know that as attached to our brief, the comparison between Star Wars and The Wizard of Oz. You can manipulate the elements and make them more abstract or more trivial to make them seem alike, but they're quite different stories when you're all done because the story is the sum of the parts and the way that they're put together, the selection and arrangement. In this case, plaintiff's work and defendant's work are quite different stories. Unless your honors have any questions. Judge Huck? No, I don't. It appears not. Thank you, counsel. Rebuttal. Thank you, Your Honors. I'd like to try to burn through some of the map issues and then address some of the other points that counsel made. Your Honor, the map in plaintiff's work can be described this way. This depicts the journey of the champion backed by Zeus and Athena to save Athens from the second army in the service of Ares as he travels away from Athens to a destination where he can perform a series of tasks that will allow him to recover or revive the means intended by Zeus and Athena to save Athens from destruction. That also is true, the subject matter of the map in God of War. If you look at the selection and arrangement of the items in the map, you'll see that there's a desert of lost souls in the God of War map. Essentially, in the same location, if you flip the maps to mirror image, which is a very common copying device, and that accommodates exactly with the meadow of the lost souls, both of them flanked by dark silhouetted figures. If you look at the dividing lines of the map, there are the two lines that come down and then open up with the destination at the upper end of one dividing line and a temple in a rectangular structure at the other end. Swirls fill the spaces. The ships are in the same locations if you flip. But really, one of the most telling things, Your Honor, is that detail that actually appears of the bottomless valley in plaintiff's map. Now, essentially, it is in the same location, and the purpose for which the champion has gone there is essentially the same. That's such a striking detail that goes beyond the stripes on the cap in the Cavalier case. If you look at the valleys artistically, the angle of the bridge, the purpose where they've gone there, the angle of the shot, it's almost identical. The fact that that map would have a sub-detail with a unique subject matter and a sub-detail like that is beyond striking, Your Honors. Now, they argue about the bottomless chasm name. The fact is plaintiff's map was never intended as bottomless. It's called the bottomless valley to indicate that it's a very deep valley. It's just a name. The fact that their valley, which is also named the bottomless chasm, and it's called that in the Prima Guide materials, and it's also alternatively called the bottomless crevasse, both synonyms for valley, that's highly significant because the map has a unique purpose that's copied by God of War. The layout, selection, and arrangement are strikingly similar. The fact that they would have this strikingly similar intimate detail for that location, none of these things have ever happened. This is a completely fictional map. The whole layout, everything is completely fictional. The fact that they would have this and then claim that they never copied is shocking to me, Your Honor. And if we look at differences between the map in the Cavalier case, yes, there were differences in one of the images, the image with the striped caps, but the striking similarities outweighed the differences. Or if there are striking similarities, such as exist in subject matter, selection, and arrangement, then that allows you to survive summary judgment regardless. Now, the other thing is, Your Honor, while the bottomless valley is part of the map, it also is its own stand-alone image appearing somewhere else. So there are two infringements actually indicated here. One is the map, considering the bottomless valley as a sub-detail, but also the bottomless valley is a stand-alone infringement. It serves a unique purpose in our work and is copied, which is copied in God of War, and that image appears as a stand-alone image in various places, as we've briefed. Your Honor, I'd like to move on now to talk about Metcalf. Metcalf allows us to predict patterns. Even if all of the things that we've claimed were seen up here, which they're not, they're distinguishable variations unique to our work, and Your Honor can check that against the records of Greek literature. Scour them. Let the proof be in the pudding. Scour them for exactly our distinguishable variations. You will not find them. And that allows us copyright protection. But even if you were able to find them, Metcalf says that we survived because we provided patterns, combinations of elements that have tremendous congruence in our work, even more so than in Metcalf. The range of patterns is extensive, and that alone allows us to survive summary judgment just on their face. We talk about differences. If you look at a work at its fundamental essence level, there are varying levels of abstraction which can lead to copyright infringement. They point to differences on the surface level. In a sense, we're different from the Funky Films case in this way. Funky Films had surface similarities, but when you look deeper, no fundamental essence similarities that were protectable. Here, we have tremendous fundamental essence similarities at levels of abstraction which allow copyright infringement. They're far stronger and more detailed than the Metcalf similarities. Moreover, if you look at things like the roles that, for example, and this will bleed over into character a little bit, if you look at the roles that Kratos performs and the character roles that we've completed, each of those roles is unique to us. They're distinguishable variations of roles. So when we combine those characters, it's appropriate. It's not just an antagonist versus a protagonist. Here, we're talking about unique roles, and you can scour the literature. You will not find those roles anywhere, as well as patterns for executing those roles. And that allows us protection and allows us to survive summary judgment. If the ---- But opposing counsel's view is that there are different stories. At bottom, there are different stories. What's your response to that? Your Honor, first of all, it's a derivative work. If you look at the fundamental essence of the stories, they are the same, and they fit in a way that's cognizable in copyright. If they've moved things around, recast them and everything else, it doesn't allow them to escape. We are looking for protected elements of plaintiff's work that show up over there, and we've listed hundreds of individual story elements and patterns. Both stories start essentially with this attack on Athens or village on the outskirts of Athens by an animalistically cruel Spartan commander who's the fanatical follower of Ares to the exclusion of Athena and the other gods. And in one version of my story, it ends when a Spartan captain renounces fanatical service to Ares and goes to Athens and kills the character performing the role of leading the attack on Athens. It is beyond shocking, just as with the map, that from this concept of a general Greek story, a story never started like it did in my work and never finished like it did. Okay? And it starts and finishes the same way in God of War at a fundamental essence level which is protectable. Not only that, I've enunciated numerous methods by which it travels by the same way. We understand your argument, counsel. You've exceeded your time. Thank you, Your Honor. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court. This completes our calendar for the day. We'll be in recess until 9 a.m. tomorrow morning. All rise.
judges: Hug, Rawlinson, Cjj Rakoff (S. New York), Dj